## Pennington v. Anglin et al.

Nov. 7, 1941.

E. R. Denney and Fritz Krueger for appellant.

S. F. Bowman and Wesley & Son for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

In July of 1938 appellant began action in ejectment against appellee and others, the petition asserting that he was the rightful owner of a described tract of land containing 101 acres; that he and his predecessors in

title had been in actual adverse possession of the tract for 36 years. It was alleged that defendants in 1937, and since, had unlawfully cut and removed timber to the value of $300, for which he asked judgment, and that they be enjoined from further trespassing.

Defendants by counterclaims asserted that they were the owners of the tract, relying upon a deed from G. M. Logan of date February 3, 1938. They asserted that the attempted conveyance from Chenault and others, who conveyed to the Big Hill Coal Company in April 1902, was void. In reply it was alleged that if defendants had obtained a deed to the tract, ''in the year 1937,'' (the Logan deed is dated 1938) the same was void and of no effect, because plaintiff and his predecessors were, in 1937 and for the past thirty-six years, continuously and openly in adverse possession of the tract. They denied that G. M. Logan ever had any interest in or title to the tract, but if he had such his right or claim thereto was barred. Kentucky Statutes, Sections 2505-2508.

In rejoinder defendants amended their counterclaim, saying that the description of the tract, as set out in their counterclaim, embraced a portion of the land described in plaintiff's petition, and some land not set out therein, and that their title to the portion embraced in both boundaries was superior, and asserted adverse possession to the tract set out in their pleading, ''since March 1934, claiming up to the boundaries up to the present time''; that believing themselves to be the owners of the land described in the counterclaim ''by reason of a claim in both law and equity, the foundation of which is a public record, in 1934 went upon said land,'' and made improvements to the extent of a $1,900 outlay. They sought to have their title quieted, but ask for judgment against plaintiff in case of eviction. A reply denying affirmative allegations of amended counterclaim completed the pleadings.

During the procedure the court directed a survey of the boundary described in the Pennington deed. Two surveyors made a report and filed a plat, which latter is not in the record. They had difficulty in closing the boundary, but upon reversing the line effected a closing, finding the boundary to contain 89 acres; at the close of the report they noted that the deed to Anglin from Logan embraced the ''89 acres and the balance of the

Samuel Logan acre survey shown by plat, excluding the 62¼ acres embraced in the Huston Lovett tract.'' Pennington amended so as to conform to the report.

During the proceedings the action was transferred to equity, but later re-transferred to the law docket. A jury was empanelled and appellant introduced proof which consisted mainly of the copies of deeds referred to in the stipulation, and proof which clearly showed that he and his predecessors in title had been in adverse possession of the tract for a period exceeding thirty years. At the close of plaintiff's evidence the court sustained Anglin's motion to instruct the jury to find in his favor, and upon verdict rendered judgment quieting Anglin's title to the boundary set up in his counter-claim, excluding the Lovett 62¼ acres. Appellant insists on reversal on the ground that plaintiff had shown record title back in 1902, and proved continuous adverse possession for more than thirty years.

There is nothing in the record which indicates the ground upon which a peremptory was directed. In appellee's brief it is argued that the "deed from Bertha Consumers Company to Pennington by Jones, receiver," is invalid; that plaintiff failed to trace title to the commonwealth, and that plaintiff's deed is champertous. Appellant says, and it seems to be agreed, that the trial court sustained the motion on the ground that the deed from Bertha Company to Pennington was of no effect, because no proof was introduced showing qualification of the receiver, nor any judgment of a court authorizing him to make conveyance.

It is admitted by appellant that there was no proof introduced showing that Jones had been appointed receiver or his authority to make the sale. This is explained by counsel, who had in his files a copy of the judgment and confirmation of the sale entered in equity action No. 2019, in the U. S. District Court of Pennsylvania, and which directed the receiver to make the sale. This was not introduced because of a stipulation.

It appears to us that defendant by stipulating that the plaintiff, and his predecessors "had a title of record, back to the year 1902," obviated the necessity of proving due execution and recordation of conveyances. Counsel for appellees contend strenuously that the sole object of the stipulation was to obviate the necessity of

reading into the record from deed books as many as eight deeds, covering 63 separate tracts of land, of which number the tract in question was one; that to construe the stipulation as an admission that plaintiff's title was good would be to give it an unnatural and an erroneous construction. It is unnecessary to hold, as issues are presented, that Pennington's title was "good" or complete; he undoubtedly held under color of title, and it is noticeable that defendants do not assert lack of title by reason of the alleged defect in the receiver's deed, but that the Chenault deed (1902) was void because his grantors had no title or color of title.

No one testifies as to having any knowledge of Samuel Logan, who it is said died in 1873. No Logan appears on the scene until the deed from G. M. in 1938; he was then eighty years of age, and lived in Michigan. Elmer Anglin had a son who "knew about the land in controversy," who had moved to Detroit in 1926. He said:

"I was always on the lookout for any Logans who might be related to Samuel Logan from Kentucky. I questioned all Logans I contacted. I found Logans in Louisville; in Ohio and some in Indiana, but they were not the right Logans. Finally a fellow-workman introduced me to a Mr. G. M. Logan. He said he was a son and only heir of Samuel M. Logan; he appeared to be about eighty years of age. He said Samuel Logan died in Lincoln County, Kentucky years before, and that his father had patented lands in many counties in Kentucky, and if a Samuel Logan had patented this land it was no doubt his father."

This information was communicated to Elmer Anglin who soon thereafter went to Michigan and he and his son took G. M. Logan to a notary, who prepared and certified the deed. The signature of G. M. Logan is by mark, without attesting witnesses. He also made affidavit that he was the sole heir of Samuel Logan.

The testimony shows that this tract in some manner came into the hands of one A. J. Cruse. Matilda Abzill was a daughter of Andy Cruse, who was a son of an elder A. J. or Andy Cruse. She does not give her age, but had known the land all her life. Her father and grandfather settled there "years and years ago." Her grandfather lived on the land all his life.

"My father was born there and he was eighty-four years old when he died; he has been dead thirteen years. He lived there until he was married, when he was twenty-five, and he always went back to see about it."

She knew that her father owned the tract; she had seen the deeds, but the trunk where he kept them was destroyed by fire. She was positive that during all the years her father and grandfather lived on the land no one by the name of Logan ever claimed title.

Alvin Abzill, fifty-four years of age, knew the land from early childhood. His father-in-law, A. J. Cruse, died in 1902. He understood that Samuel Logan deeded the land to his wife's grandfather, and that her father made deed to Chenault and Evans in 1902. After the younger Cruse's death the land was in possession of the Big Hill Coal Company. He never heard of Anglin claiming to own the land prior to 1938, nor had he ever at any time heard any Logan claiming it. It was known for thirty-six years as the "Big Hill Company" land, and prior to that as the Andy Cruse land on Cruse Ridge.

Huston Lovett owned (by deed) 63 acres of the original 179 acre patent, where he had lived for 35 years. He knew the land for 60 years. A man named Davis surveyed the 101 acre tract 45 years ago for Chenault, who sold to the Big Hill Company. They marked the boundary, blazed the bushes and hacked the trees. The Big Hill Company got possession in 1902; he "painted the line," and took charge for Big Hill Company. He "saw there was no timber cut or damage done."

Without detailing similar proof on the matter of title, which came to the coal company in 1902, of which there is an abundance, it may be said it clearly appears that Chenault, and others, held under color of title for a period of time prior to conveyance to the coal company, and the proof is overwhelming to the effect that Pennington's predecessors from Big Hill deed on, had held the boundary under adverse possession for a longer period than thirty years. Neighboring owners who had long known the property, and caretakers testify to possession and use in such manner as to leave no doubt.

On the other hand Anglin shows some sporadic activities prior to 1934, and considerable activity begin-

ning about 1934 or 1935, which would indicate a belief on his part that he was the owner, such acts being followed by the Logan deed in 1937. We need not comment on the deed of G. M. Logan, but cannot escape the conclusion that it is doubtful if it is of sufficient quality to pass title to Anglin. Furthermore, under all the facts, it may be readily concluded that if either deed is champertous it is the one to Anglin.

It is unnecessary to set out Pennington's claim of title, which goes back to 1902. In addition to the deed by which he took title it appears that the Bertha Coal Company (Pennington's immediate predecessor) was in bad lines in 1931, and had failed for four or five years to meet tax payments on a tract of more than 3000 acres, including the boundary in question. The whole tract was sold for taxes and Dr. Pennington became the purchaser in 1935, the proper officer making a deed to him, which was on record when Anglin took the Logan deed.

Counsel for appellee is contending, though not strenuously, that the court correctly quieted his title and dismissed appellant's petition because Pennington failed to trace title to the commonwealth, and cites Alexander v. Duncan, 247 Ky. 422, 57 S. W. (2d) 58, 59. This case does not sustain his contention. We were dealing there with the state of pleadings relating to "common source." We held in that case that "though it is true that a plaintiff in ejectment must recover on the strength of his own title, the authorities uniformly hold that he may sustain this burden by showing title by adverse possession, or from the commonwealth, or from a common source. [Citing cases.] * * * All that plaintiff need allege is that he is the owner of and entitled to the possession of the land, and that the defendant is wrongfully withholding possession thereof." Appellant not only proved adverse possession but came nearer proving title from a common source than did Anglin, though neither specifically plead such title.

In the recent case of Engle v. Walters, 282 Ky. 732, 140 S. W. (2d) 402, 403, we wrote:

"As to the sufficiency of the petition, Engle alleged that he was the owner of the land in dispute and entitled to its possession and that Walters was wrongfully withholding possession. It was not necessary for him to plead the source of his title. Whitaker

v. Million, 270 Ky. 708, 110 S. W. (2d) 653, and cases cited therein.''

Anglin sought to recover on two grounds: His adverse possession, in which he failed in so far as proof was concerned, and his title gained by the Logan deed. It would go far afield to hold that he sufficiently traced his title back to the commonwealth or a common source. While the Samuel Logan patent and the deed from G. M. are exhibited, there is a total failure of proof that G. M., whose father died in 1873, had ever taken or claimed possession of the land. In fact his only claim was that the disputed tract was perhaps one patented by his father in 1819. See Musick v. Horn, 140 Ky. 639, 140 S. W. 1014.

The court, as the case turned, did not pass on the question of damages set up by appellant, nor on appellees' claim for improvements as set up in his counterclaim; due to this fact we have not discussed these matters. We are of the opinion that the court erred in declaring Anglin's title quieted, and in dismissing appellant's petition.

Judgment reversed for proceedings consistent with this opinion.